**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ARTHUR B. ARGUELLO,

     Plaintiff,

v.                                                                          Civ. No. 17-187 JCH/GJF

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

     Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's "Motion to Remand or Reverse Agency Decision" [ECF No. 18] and "Brief in Support of Motion to Reverse or Remand Agency Decision" (collectively, "Motion"),[1] filed on July 11, 2017. ECF No. 19. The Commissioner responded on August 21, 2017. ECF No. 21. Plaintiff replied on September 4, 2017. ECF No. 22. On September 25, 2017, U.S. District Judge Judith C. Herrera referred the above-captioned cause to this Court for recommended findings and disposition. ECF No. 27. Having meticulously reviewed the entire record and the briefing, the Court finds that the Motion is not well-taken and recommends that it be denied.

## I.      BACKGROUND

Plaintiff was born on July 29, 1966. Administrative R. ("AR") 27. After earning his high school diploma, Plaintiff started working as a ranch hand in the Espanola Valley in 1998 and continued that work for fourteen years with the same employer. *See* AR 24, 37-38. Plaintiff first stopped working on January 16, 2013, following a motor vehicle accident. AR 39-40. In March

---

[1] Plaintiff reserves the substance of his Motion for his Brief in Support. Therefore, all citations to Plaintiff's Motion refer to Plaintiff's Brief in Support [ECF No. 19] and not the Motion itself [ECF No. 18].

2013, Plaintiff returned to work for a month until he injured his back in April 2013, an injury that Plaintiff claimed left him unable to work. AR 40. A week after Plaintiff's back injury, his employer terminated his employment. AR 40.

On May 1, 2013, Plaintiff filed an application for disability insurance benefits that was denied on July 17, 2013. AR 18. On March 28, 2014, Plaintiff filed his second application for disability insurance benefits, alleging a disability onset date of January 16, 2013. AR 18. Plaintiff's application was denied initially and upon reconsideration. AR 18. Plaintiff then requested a hearing, which was held on August 5, 2015. AR 18. Plaintiff testified and was represented by counsel. AR 18. Because Plaintiff's first disability application had been denied on July 17, 2013, Administrative Law Judge ("ALJ") Deborah L. Rose considered the relevant time period for Plaintiff's second disability application to be July 18, 2013 through the date of her decision, August 28, 2015.[2] AR 18, 28.

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. AR 28. The Social Security Administration's ("SSA's") Appeals Council denied Plaintiff's request for review on December 21, 2016. AR 1. Consequently, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2015). Plaintiff timely filed his appeal with the U.S. District Court on February 7, 2017. ECF No. 1.

## II.    PLAINTIFF'S CLAIMS

Plaintiff asserts four claims of error. First, Plaintiff argues that the ALJ erred in her evaluation of the opinion of Dr. Robert Krueger, Ph.D., a consultative psychological examiner.

---

[2] Plaintiff's third application, which concerned the time period of August 29, 2015, to June 13, 2017, was granted without a hearing on June 13, 2017. Pl.'s Mot. 11-12, ECF No. 19. Because the SSA granted Plaintiff's third application, Plaintiff has been receiving disability benefits retroactive to August 29, 2015. The instant appeal, therefore, relates only to Plaintiff's second application, which concerned the period between July 18, 2013 and August 28, 2015. The Court further notes that Plaintiff was receiving disability benefits from his insurance company during this period. AR 21.

Pl.'s Mot. 6-11, ECF No. 19. Specifically, Plaintiff argues that the ALJ erred by discounting Dr. Krueger's opinion because he relied upon Plaintiff's statements and because the ALJ concluded that Dr. Krueger did not rely on objective evidence. *Id.* at 6-8. Additionally, Plaintiff asserts that the ALJ erred by concluding that the totality of the evidence did not support Dr. Krueger's opinion. *Id.* at 9. Plaintiff also contends that the ALJ erred by discounting Dr. Krueger's opinion because Plaintiff did not receive treatment for pain from May 2014 to January 2015. *Id.* at 10.

Plaintiff next claims that this case should be remanded so that the ALJ can consider the report of Dr. Michael F. Gzaskow, M.D., a consultative psychiatrist who provided a report as part of Plaintiff's third application for disability benefits, which was filed after the application at issue in this appeal. *Id.* at 11-12. In his penultimate claim, Plaintiff argues that the ALJ erred by basing her unfavorable assessment of Plaintiff's credibility solely on his testimony that his physicians suggested that he use a cane, when the ALJ found that the medical evidence did not support Plaintiff's statement. Pl.'s Mot. 12-13. Finally, Plaintiff asserts that the ALJ erred by misstating the applicable burden of proof at step five. *Id.* at 15-16.

## III.    APPLICABLE LAW

### A.    Standard of Review

The Court's review of an ALJ's decision denying disability is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for review of an ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.      Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See*

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    FACTUAL BACKGROUND RELEVANT TO THIS APPEAL

The Court will summarize Dr. Krueger's opinion, as well as the portions of Plaintiff's testimony during the hearing on this matter that are relevant to the issues on appeal.

### A.    Dr. Krueger's opinion

Plaintiff's counsel arranged for Plaintiff to be psychologically evaluated by Dr. Robert Krueger, Ph.D., "to assist with processing of his disability claim[,]" among other purposes. AR 539. Dr. Krueger evaluated Plaintiff on May 20, 2015. AR 539. During the evaluation, Dr.

Krueger interviewed Plaintiff, administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV")[3] and the Beck Depression Inventory ("BDI")[4], and apparently reviewed at least some of Plaintiff's medical records.[5] AR 539.

Plaintiff told Dr. Krueger about a motor vehicle accident that occurred in January 2013. AR 539. Plaintiff has since experienced anxiety while driving, and "[gets] shivers when [he drives] by the accident." AR 540. Plaintiff has frequently experienced what Dr. Krueger characterized as "disturbing flashback memories about the [motor vehicle accident.]" AR 540. Plaintiff also "described having an increased startle response and said he is sensitive to loud noises[.]" AR 540. Plaintiff stated that he has some anger issues with respect to aggressive drivers, has "probable panic attacks around crowds of people[,]" and has difficulties with depression, although he noted that he feels down when he does not take his anti-depression medication. AR 540-41. Plaintiff stated that he is "very anxious when he is around aggressive drivers" and confirmed hypervigilance when Dr. Krueger asked him about it. AR 540.

With respect to his mental health, Plaintiff reported problems with both depression and anxiety. AR 540. Plaintiff also reported that he has "severe and chronic sleep disturbance" and that he "frequently wakes up with pain." AR 540. Dr. Krueger asked Plaintiff about whether he had a history of suicidal behavior, to which Plaintiff responded, "Before I did, and I can't do half of what I used to do." AR 541. Dr. Krueger also asked Plaintiff about counseling, and Plaintiff stated that he received counseling for a few months.[6] AR 541.

---

[3] The WAIS-IV uses four factors, or indexes, to provide "a composite score that represents overall general intellectual ability (i.e. Full Scale IQ)." http://www.mdpi.com/2079-3200/5/1/2/htm (last visited May 31, 2018).

[4] "The [BDI] is one of the most popular scales not only as one of the most widely used self-report instruments for evaluating the severity of depression, but also for screening for depression in clinical practice and general population of adolescents as well as adults."
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5240453 (last visited May 16, 2018).

[5] Although Dr. Krueger wrote that he reviewed Plaintiff's medical records, Dr. Krueger's opinion indirectly refers to those records only once, when describing medical treatment on Plaintiff's back. AR 539-44.

[6] The Court notes that there is no corroborating evidence in the record to substantiate this counseling.

Dr. Krueger concluded that Plaintiff had anxiety-related symptoms as well as symptoms that are consistent with Post-Traumatic Stress Disorder ("PTSD"), and thus Plaintiff qualified for a diagnosis of PTSD. AR 541. Dr. Krueger opined, "[Plaintiff] also reported having difficulties with depression, but he [does] not appear to meet the full criteria for having a major depressive disorder now." AR 541. Plaintiff scored a 20 on the BDI[7], which according to Dr. Krueger was a "moderately elevated score," suggesting "that he does have significant problems with depression now." AR 542. Dr. Krueger concluded that Plaintiff showed "significant evidence of depression." AR 543. Dr. Krueger also referred to Plaintiff's "recent" score of 45 on the Global Assessment of Functioning ("GAF").[8] However, Dr. Krueger did not state whether he administered the GAF, or when the GAF was administered to Plaintiff. Dr. Krueger also did not otherwise substantively refer to Plaintiff's GAF score. *See* AR 542-43.

Dr. Krueger ultimately assessed the following functional limitations, concluding that Plaintiff "has multiple impairments" and "significant functional impairment" [AR 543]:

> Mild impairments:
> > Understanding, remembering, and following simple work instructions [AR 543]
> Significant impairments:
> > Visual motor working speed [AR 543]
> Moderate impairments:
> > Understanding, remembering, and following complex or detailed instructions [AR 543]
> > Relationships with coworkers, supervisors, and the general public [AR 543]
> > Being aware of and reacting appropriately to dangers [AR 544]
> Marked impairments:

---

[7] On the BDI-II, which has been in use since 1996, "The total score ranges from 0 to 63, with higher scores indicating more severe depressive symptoms." *Id.*

[8] The Global Assessment of Functioning test is "widely used for scoring the severity of illness in psychiatry." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2880316/#B14 (last visited June 19, 2018). A GAF score of 45 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g. no friends, unable to keep a job)." *See* https://msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited June 19, 2018). Serious symptoms are more severe on the GAF scale than moderate symptoms. *See id.* The GAF score is inversely correlated with the severity of symptoms, so moderate symptoms correspond to a higher GAF score than do serious symptoms. *See id.*

Maintaining pace and persistence in most work environments [AR 543]
Adjusting to changes in work environment [AR 543]
Traveling to distant places alone [AR 543]

## B.     Plaintiff's Testimony

Plaintiff testified on August 5, 2015, and was represented by counsel.  AR 35.  The ALJ questioned Plaintiff first, beginning by asking Plaintiff about his last fifteen years of work history.  AR 38.  In 2000, Plaintiff worked as a ranch hand, which involved lifting bags of cement and bales of hay that sometimes weighed over 100 pounds.  AR 39.  Plaintiff worked for the same employer for fourteen years.  AR 39.  Plaintiff testified that his job involved mostly physical labor, although sometimes he worked on material lists for projects.  AR 39.

Plaintiff confirmed that he was injured in a motor vehicle accident on January 16, 2013.  AR 39.  Plaintiff did not work for approximately two and a half months following the accident, but returned to work in April 2013.  AR 40.  After a month, Plaintiff testified that he "popped [his] back out again," thereby reinjuring it, when he "was putting the bales of hay to load [and] feed the horses."  AR 40.  Plaintiff could not work, and after a week his employment was terminated.  AR 40.  Plaintiff testified that, after the accident, he suffered "severe back pain, upper and lower, and head and neck and into [his] shoulder."  AR 41.

Plaintiff explained that he later had back surgery, a lumbar laminectomy, in December 2013.  AR 40.  Prior to the surgery, Plaintiff recounted that he used a walker, and following the surgery, Plaintiff developed mental health problems.  AR 40-41.  Plaintiff "got really depressed and [felt] a lot of anxiety and remembering the accident, it's changed my life, and not for the good."  AR 41.

During the hearing, Plaintiff's counsel asked, "You have a cane today.  Who prescribed – did a doctor tell you to use a cane?"  AR 42.  Plaintiff responded, "They asked for me to stay –

suggested I could use one and stuff to my – support myself so I don't keep falling on the - " AR 42. Plaintiff's attorney then asked, "Is it helpful?" AR 42. Plaintiff responded, "Yes." AR 42. Plaintiff's attorney then asked, "Do you fall occasionally?" AR 42. Plaintiff responded, "I did the other day, once in a while, and my left leg goes numb and it just like gives out. And so I try to walk close to the walls and furniture and stuff so if I do have a episode, and sometimes I don't have my cane with me, so I lean for something to hold onto." AR 42.

With respect to his physical capabilities, Plaintiff testified that he can stand for approximately ten minutes in one place without moving, at which point he has to rearrange his legs and body to change his blood circulation. AR 42. Plaintiff also explained that he can walk without pain for "maybe 20 feet or so" and that most of the time, he feels numbness in his legs. AR 43. Plaintiff estimated that on flat ground, he can walk for approximately five minutes before he has to stop and rest because of muscle spasms. AR 44. Plaintiff also stated that he can sit "for a little while" before he has to "get up and walk around to let the blood circulate[.]" AR 44. Plaintiff opined that he can lift approximately ten pounds "without any real pain[.]" AR 45.

Regarding his activities of daily living, Plaintiff testified that he helps his wife with vacuuming and sweeping the floor, and that while he can walk around while pushing the vacuum, he is slower than he used to be. AR 43. Plaintiff stated that he can stand and wash the dishes, but not for too long. AR 44.

Turning to medication, Plaintiff explained that he takes hydrocodone twice a day and that it helps with his pain. AR 46. Plaintiff stated that he also takes methocarbamol, a muscle relaxer, and Sertraline, an anti-depressant. AR 47. Plaintiff acknowledged that, now that his physicians have appropriately adjusted his medication regimen, his medication helps his pain, anxiety, and depression. AR 47.

With respect to his mental health, Plaintiff testified that he was diagnosed with depression in approximately 2014. AR 47. He originally obtained anti-depressant medication from his surgeon, Dr. Philip T. Shields. AR 47-48. Eventually, Plaintiff switched to taking Sertraline daily, which helps him feel better. AR 48. Plaintiff elaborated on how much his medication helps him: "With the medicines, it does help me a lot because if I don't take my medicine, it's like a whole, dark, different person." AR 48.

Plaintiff's counsel asked him why he feels he cannot work. AR 48. Plaintiff responded, "Because I can't – it's just like anxiety now where being around a lot of people just started like – makes me nervous and anxious and - " AR 48. Plaintiff's counsel then asked Plaintiff whether he had any difficulty driving, and Plaintiff responded that he does because of "the anxiety of the traffic coming on to me and stuff and more careless people I noticed around." AR 49. Despite this, Plaintiff conceded that he was able to drive seventy miles to attend his hearing, but had to stop once during the drive to walk around. AR 49. Generally, when driving, Plaintiff has to stop and walk around because of muscle spasms and cramps. AR 49.

Plaintiff opined that he could not do a job that required him to sit for six hours a day because he "can't sit for that long" and would then be fired. AR 50. Plaintiff also testified that he has problems in his hands because of arthritis and metal in his wrist. AR 50-51. Plaintiff broke his wrist in 2012 prior to his car accident, and testified that he was still able to work following that injury. AR 51. When Plaintiff's counsel asked whether he could go back to doing carpentry work, Plaintiff stated, "I wouldn't think I could handle that and stuff, just thinking of the lumbar and stretching or the way I used to do it before. Things like that. It would be too strenuous." AR 52.

## V.     ALJ'S DECISION

The ALJ issued her decision on August 28, 2015. AR 28. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 16, 2013. AR 20. At step two, the ALJ found Plaintiff to suffer the following severe impairments: (1) status post right wrist fracture, (2) status post fracture at L-4, and (3) status post laminectomy at L4-5 and L5-S1. AR 21.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21-23. The ALJ "compared [Plaintiff's] signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments[,]" with specific emphasis given to Listing 1.02 (major dysfunction of a joint due to any cause) and Listing 1.04 (disorders of the spine). AR 23. The ALJ concluded that "[t]here is no evidence of nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis resulting in an inability to ambulate effectively or perform fine and gross movements effectively." AR 23.

The ALJ relied on the following medical evidence of record: records from Espanola General Hospital dated February 5, 2012 [AR 333-45] and November 8, 2013 [AR 426-43]; records from Holy Cross Hospital dated January 16, 2013, to January 17, 2013 [AR 269-330]; physical therapy records from Espanola Therapy Center dated February 29, 2012, to March 5, 2013 [AR 346-388], and February 25, 2014, to March 21, 2014 [AR 444-54]; treatment records from Santa Fe Pain and Spine Specialists dated June 4, 2013 to November 5, 2013 [AR 397-99]; treatment records from El Centro Family Health dated February 13, 2013, to May 1, 2013 [AR 390-95], June 27, 2013, to March 21, 2014 [AR 408-23], May 2, 2014, [AR 502-03], June 10, 2014 [AR 500-01], and January 27, 2015 [AR 512-14]; treatment records from Santa Fe Brain and Spine dated November 26, 2013, to March 11, 2014 [AR 461-68]; and the psychological

evaluation of Dr. Robert Krueger, Ph.D [AR 539-47]. Plaintiff's primary healthcare providers were Physician Assistant ("PA") David Gould and PA Douglas A. North at El Centro Family Health. AR 512-38. Plaintiff also underwent a lumbar laminectomy performed by Dr. Philip T. Shields, M.D., at Santa Fe Brain and Spine. AR 461-68.

In assessing the severity of Plaintiff's physical impairments, the ALJ noted that x-rays of Plaintiff's right hand on February 5, 2012, showed a right wrist fracture. The ALJ also noted that Plaintiff was hospitalized on January 16, 2013, after a motor vehicle accident. AR 21. Plaintiff suffered a fracture of his T-4 vertebrae. AR 21. Finally, the ALJ noted that Plaintiff underwent a lumbar laminectomy at L4-5 and L5-S1. AR 21.

To evaluate the severity of Plaintiff's mental impairments, the ALJ engaged in the required Psychiatric Review Technique ("PRT"). AR 21-23. First, the ALJ noted that Plaintiff had a depression screening on August 7, 2013, that showed moderate depression. AR 21. Plaintiff also denied depression on August 22, 2013, and on February 21, 2014, Plaintiff's depression medication was increased. AR 21. On March 21, 2014, Plaintiff stated that the increase in his depression medication had helped. AR 21.

The ALJ then summarized Dr. Krueger's report of his evaluation of Plaintiff. AR 21-22. The ALJ wrote that Plaintiff reported depression and anxiety involving driving, and also told Dr. Krueger that he was receiving disability benefits from his insurance company. AR 21. The ALJ repeated Dr. Krueger's conclusion that Plaintiff demonstrated neutral mood and emotional expression during his evaluation, and that testing showed a mild to moderate impairment in some cognitive skills. AR 21. Testing showed that Plaintiff has a full scale Intelligence Quotient ("IQ") of 93, and that "although [Plaintiff] alleged problem[s] with short-term memory, on testing he did relatively well with memory skills. [Plaintiff] showed a mild impairment with

verbal comprehension skills and moderate impairment with visual motor processing speed." AR 21.

The ALJ recited Dr. Krueger's conclusions regarding Plaintiff's impairments, noting among other impairments that Dr. Krueger found that Plaintiff had a moderate impairment with complex or detailed instructions, and a marked impairment with maintaining pace and persistence in most work environments. AR 21. The ALJ also noted Dr. Krueger's opinions that Plaintiff had a marked impairment with adjusting to changes in a work environment, a moderate impairment in relationships with coworkers, supervisors, and the general public, and a marked impairment in being aware of and reacting appropriately to dangers. AR 21. The ALJ also noted Dr. Krueger's conclusion that Plaintiff's GAF score is 45. AR 21.

The ALJ granted little weight to Dr. Krueger's opinion because:

[Dr. Krueger] based his limitations on what [Plaintiff] told him about his physical problems and emotional difficulties and not on objective evidence. The totality of the evidence does not support Dr. Krueger's opinion because [Plaintiff] has never sought or received treatment from a mental health professional. He has received medication from his treating source, a physician's assistant. In addition, [Plaintiff] sought no medical treatment for pain from May 2014 until January 2015. For these reasons, Dr. Krueger's opinion is given little weight.

AR 21. The ALJ added that Plaintiff testified that "when he takes his medication, his mood is good." AR 22. Accordingly, the ALJ found that Plaintiff's depression, PTSD, and pain disorder did not "cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and [were] therefore nonsevere." AR 21.

As part of the PRT, the ALJ was required to evaluate four functional areas: activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. AR 22. The ALJ concluded that Plaintiff's range of daily activities "clearly shows no limitation in [Plaintiff's] daily activities due to depression." AR 22. The ALJ next

evaluated Plaintiff's social functioning and found that Plaintiff has no limitation in that area.  AR 22.  The ALJ found that Plaintiff has only mild limitation in concentration, persistence, and pace, in part because Plaintiff testified that he watches television, listens to the radio, and reads.  AR 22.  The ALJ completed the PRT by evaluating Plaintiff's episodes of decompensation, and found that Plaintiff had not experienced any that had been of extended duration, and found no evidence that Plaintiff had ever been hospitalized for psychiatric reasons.  AR 22.  The ALJ emphasized that her findings for the PRT, including any limitations, "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  AR 22-23.

The ALJ then noted that two psychologist medical experts with the SSA "determined that [Plaintiff's] mental impairments were nonsevere[,]" and accorded their opinions significant weight "because they are deemed experts and highly knowledgeable in the area of disability and because their opinions are well supported by medical acceptable clinical and laboratory techniques and largely consistent with the record as a whole[.]"  AR 23.

Ultimately, the ALJ found that Plaintiff has the residual functional capacity "to perform a reduced range of sedentary work . . . he can lift and/or carry push [*sic*] and/or pull 10 pounds; stand and/or walk for 2 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday.  He can only occasionally push/pull with both lower extremities and occasionally climb, balance, stoop, kneel, crouch, and crawl."  AR 23.  Plaintiff's residual functional capacity did not include any limitation associated with Plaintiff's mental health conditions.  The ALJ also concluded that Plaintiff's activities of daily living show that he "is able to perform sedentary work activity."  AR 26.  The ALJ wrote that "objective evidence in the record does not support a finding that [Plaintiff cannot] perform sedentary work."  AR 26.  The ALJ acknowledged that

Plaintiff had less than full range of motion in his legs, and that his impairments limit him to sedentary work. AR 26. The ALJ also discussed the reports of two non-examining consultative physicians, who opined that Plaintiff can perform sedentary work, and accorded them significant weight. AR 26. The ALJ emphasized, "I do not discount all of [Plaintiff's] complaints. However, [Plaintiff's] treating physicians[9] did not place any functional restrictions on his activities that would preclude sedentary work activity with the previously mentioned restrictions. [Plaintiff's] daily activities are consistent with the performance of at least sedentary work." AR 27.

The ALJ then shifted to evaluating Plaintiff's credibility, and found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." AR 24. The ALJ's explanation for the unfavorable credibility determination was wide-ranging and thorough, including a detailed review of Plaintiff's medical history, as well as statements Plaintiff made to health care providers. AR 25-27. The ALJ discussed Plaintiff's report that he was in pain "everywhere" in February 2013, but noted that in March 2013 Plaintiff requested a work release, that he was feeling "much better while taking Lortab[,]" his pain was a 1 (presumably 1 being the lowest rating), and he was generally feeling good. AR 24-25. An MRI in March 2013 revealed degenerative disc disease, and in June 2013 and November 2013, Plaintiff had steroid injections in his back. AR 25.

In June 2013, Plaintiff's physical examination indicated pain in his left hip and leg. In August 2013, Plaintiff's depression screening showed moderate depression, and Plaintiff was

---

[9] It is unclear what the ALJ meant by treating physicians since there were no opinions in the record regarding Plaintiff's functional ability and limitations from his primary treating provider, Physician Assistant Gould, or the neurosurgeon who conducted his laminectomy, Dr. Shields. The only medical opinions in the record regarding Plaintiff's functional ability and limitations were from non-examining consultative physicians for the SSA and from Dr. Krueger, the examining consultative psychologist.

walking with a limp and with the assistance of a cane.  AR 25.  Later in August 2013, Plaintiff reported that hydrocodone helped "a lot" with his pain.  AR 25.  Also in August 2013, Plaintiff saw a neurosurgeon "for back pain, numbness, and tingling in his legs."  AR 25.  At that time, Plaintiff had decreased range of motion in his back, and the surgeon recommended fusion surgery.  AR 25.  Plaintiff saw a different surgeon for a second opinion, who recommended a laminectomy, which Plaintiff underwent in December 2013.  AR 25.  In follow-up appointments after his laminectomy, Plaintiff showed a pattern of improvement, although by May 2014 Plaintiff reported some left leg numbness, occasional pain in his thighs, less than full range of motion for both legs, and difficulty with flexion and extension of the legs at the hip.  AR 25.

By January 2015, Plaintiff reported that surgery had helped "'a lot' and that injections helped a little bit."  AR 25.  Plaintiff asked PA Gould to refill his pain medication, but PA Gould indicated that he would do so only if Plaintiff's dosage was decreased by half, and Plaintiff said that "he could live with that."  AR 26.  The ALJ also found that because Plaintiff agreed to cut his dose of pain medication in half, his pain was controlled by medication, "which contradicts his allegations of totally disabling pain and reduces his credibility."  AR 26.

Regarding Plaintiff's use of a cane, the ALJ wrote that Plaintiff "testified that his doctors suggested using a cane because his leg goes out and he has fallen."  AR 26.  The ALJ concluded that "[a] review of the medical evidence does not support this statement because there is no evidence that any of [Plaintiff's] treating physicians 'suggested' that he use a cane.  This inconsistency significantly reduces [Plaintiff's] credibility."  AR 26.

## VI.    ANALYSIS

Plaintiff's disability application was premised predominantly on his physical injuries resulting from his motor vehicle accident.  Although serious and limiting, these injuries and the

ALJ's consideration of them are *not* at issue in this appeal. Instead, this appeal has morphed and been reshaped to focus on mental limitations that Plaintiff now claims he has. As explained below, Plaintiff's allegations of error are not well taken because either the ALJ's findings were supported by substantial evidence or the law does not support Plaintiff's position. The ALJ's evaluation of Dr. Krueger's opinion was supported by substantial evidence, as was the ALJ's determination of Plaintiff's credibility. Additionally, Dr. Gzaskow's opinion concerned a time period other than that at issue in this appeal and is not material to this appeal. Finally, the ALJ accurately described the Commissioner's burden at step five. The Court therefore recommends that Plaintiff's Motion be denied and the ALJ's decision be affirmed.

## A. The ALJ's Evaluation of Dr. Krueger's Opinion Was Supported by Substantial Evidence

Plaintiff sets forth three primary challenges to the ALJ's evaluation of Dr. Krueger's opinion. None are persuasive to the Court. Plaintiff's challenges are essentially a request to reweigh the evidence, which the Court declines to do. The ALJ not only adequately explained her findings and conclusions with respect to Dr. Krueger's opinion, but also properly relied on the source of Dr. Krueger's information (largely Plaintiff's statements) and appropriately compared the totality of the evidence before her to Dr. Krueger's opinion to evaluate its consistency. The Court recommends that the ALJ's evaluation of Dr. Krueger's opinion be affirmed because it is supported by substantial evidence.

### 1. The ALJ did not err by discounting Dr. Krueger's opinion regarding Plaintiff's limitations.

Plaintiff argues that Dr. Krueger was permitted to rely upon Plaintiff's statements during his consultative psychological examination, and that a psychological opinion need not be based solely on objective tests. Pl.'s Mot. 6-7. Plaintiff also appears to argue that the ALJ did not have

any legal or evidentiary basis for finding that Dr. Krueger's opinion was based only on Plaintiff's subjective complaints, which "runs afoul of the prohibition of speculation in *McGoffin v. Barnhart*[.]"[10] *Id.* at 7. Plaintiff emphasizes that Dr. Krueger administered the WAIS-IV and BDI, which "formed part of the basis for his decision[,]" and thus the ALJ's "objection for lack of objectivity is without merit." *Id.* at 8.

The Commissioner responds that "the ALJ was entitled to consider the extent that Dr. Krueger based his opinion in part on Plaintiff's subjective complaints, in particular those of physical pain, which were outside the scope of his examination." Def.'s Resp. 8, ECF No. 21. The Court agrees with the Commissioner that the ALJ was permitted to consider the extent to which Dr. Krueger's opinion regarding Plaintiff's limitations was based on Plaintiff's statements, rather than objective tests.

Plaintiff's arguments are almost entirely based on a misreading of the ALJ's decision. A careful review of the ALJ's decision reveals that the ALJ did not conclude that Dr. Krueger's *opinion* was based solely on what Plaintiff told him, and is thus unreliable. *See* Pl.'s Mot. 7. Rather, the ALJ wrote that Dr. Krueger's *limitations* were based solely on what Plaintiff told him. AR 21. The ALJ is largely correct. While Dr. Krueger mentioned cognitive impairment and significant impairment with visual motor working speed, both of which he measured with the WAIS-IV, Dr. Krueger's assessment of Plaintiff's functional limitations was otherwise almost entirely based on Plaintiff's self-reporting. For example, Dr. Krueger opined that "[b]ecause of chronic pain and reported physical limitations, ongoing emotional difficulties with

---

[10] The accurate citation for *McGoffin v. Barnhart* is 288 F.3d 1248 (10th Cir. 2002). *McGoffin* quoted *Morales v. Apfel*, 225 F.3d 310, 317 (3d. Cir. 2000), which provided that when an ALJ rejects a treating physician's assessment, the ALJ may not do so on the basis of his or her own credibility judgments, speculation, or lay opinion. 288 F.3d at 1252. Plaintiff cited to 373 F.3d 1116, 1121 (10th Cir. 2004), which is the citation for *Langley v. Barnhart*. *Langley* quotes *McGoffin*'s quotation of *Morales*. 373 F.3d at 1121. Because *Langley* quotes *McGoffin* with respect to what Plaintiff terms the Tenth Circuit's "prohibition of speculation", the Court assumes that Plaintiff intended to cite *McGoffin* rather than *Langley*. *See* Pl's Mot. 7.

PTSD and depression, and some degree of cognitive impairment[, Plaintiff] can be expected to have mild impairment with understanding, remembering, and following simple work instructions and at least moderate impairment with complex or detailed instructions." AR 543. Plaintiff entirely self-reported chronic pain, physical limitations, and ongoing emotional difficulties with PTSD and depression. While the BDI showed moderate depression and the GAF reflected serious symptoms, Dr. Krueger did not refer to the BDI or the GAF in determining those limitations. Notably, Dr. Krueger never once referred to the BDI, the GAF, or the WAIS-IV in explaining why he assessed certain functional limitations. It was therefore reasonable for the ALJ to discount Dr. Krueger's assessment of Plaintiff's limitations because that assessment was almost entirely based on Plaintiff's statements.

> ## 2. The ALJ did not err by finding that Dr. Krueger's opinion was inconsistent with the totality of the evidence.

Plaintiff asserts that the ALJ erred in concluding that Dr. Krueger's opinion was inconsistent with the totality of the evidence, and that "there were no other examining mental health professionals who might have had a different assessment [than Dr. Krueger]." Pl.'s Mot. at 9. Plaintiff argues that the totality of the evidence, other than Dr. Krueger's opinion, consists only of PA Gould's records and the opinion of the non-examining consultative physician for the SSA, Dr. Mary Lanette Rees, M.D. *See id.* at 9. According to Plaintiff, Dr. Krueger's opinion is entitled to more weight than Dr. Rees's. *Id.*

The Commissioner responds that the ALJ reasonably accorded little weight to Dr. Krueger's opinion because the record did not support his opinion. Def.'s Resp. 5, ECF No. 21. Specifically, Plaintiff did not receive specialized mental health treatment and routinely denied depression, hopelessness, and suicidal thoughts. *Id.* Plaintiff also felt better when he took his medication for depression, and even though PA Gould recommended that Plaintiff make an

appointment with a mental health provider, there is no evidence that he did so. *Id.* The Commissioner also asserts that the ALJ "reasonably found Plaintiff's activities were inconsistent with Dr. Krueger's assessment." *Id.* at 6. The Court agrees with the Commissioner and the ALJ that the record does not support Dr. Krueger's restrictive limitations.

To determine the weight given to a medical opinion, the ALJ utilizes the following factors: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention or of which the ALJ is aware. 20 C.F.R. § 404.1527(c) (2017)[11]. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Although examining relationship is just one of several factors that the ALJ should consider in determining the weight given to a medical opinion, the Court notes that Dr. Krueger was a consultative examiner who examined Plaintiff on a single occasion. AR 539. The factors of supportability and consistency also support the ALJ's granting of little weight to Dr. Krueger's opinion. In contrast to Dr. Krueger's extremely restrictive limitations, the non-examining consulting psychologists for the SSA concluded that Plaintiff's depression and anxiety were non-severe impairments. *See* AR 63-65 (Dr. Charles F. Bridges, Ph.D., concluding that Plaintiff's affective disorders were non-severe); AR 77-79 (Dr. Dan M. Cox, Ph.D., affirming Dr. Bridges' conclusion that Plaintiff's affective disorders were non-severe). For whatever reason, Plaintiff does not address the opinions of Dr. Bridges and Dr. Cox. Plaintiff

---

[11] This regulation applies to claims filed before March 27, 2017. Plaintiff's application for disability benefits that is at issue in this appeal was filed on March 28, 2014.

also states that Dr. Rees affirmed the assessments of the non-severity of Plaintiff's affective disorders. *See* Pl.'s Mot. 9. However, Dr. Rees's opinion did not concern Plaintiff's affective disorders. Dr. Rees was merely affirming the previous severity findings concerning Plaintiff's *physical* impairments. AR 81-82.

Plaintiff also relies on the records of PA Gould. Pl.'s Mot. 9. Plaintiff characterizes those records as consistent with Dr. Krueger's opinion, or at least sufficiently consistent that the ALJ's conclusion that "[t]he totality of the evidence does not support Dr. Krueger's opinion" is wrong. *See id.*; AR 21. To the contrary, PA Gould's records show a multi-year history of Plaintiff either denying severe depression or denying depression and anxiety generally. *See* AR 470 (August 15, 2013); AR 418 (August 19, 2013); AR 416 (August 22, 2013); AR 412 (November 12, 2013); AR 408 (March 21, 2014 - Plaintiff denied depression, but acknowledged that increasing dosage of Sertraline helped with his depression); AR 502 (May 2, 2014); AR 512 (January 27, 2015). *But see* AR 420-21 (on August 7, 2013, Plaintiff reported feeling down, depressed, or hopeless nearly every day, and PA Gould wrote that Plaintiff will make an appointment with a mental health provider to discuss recent sadness[12]); AR 414 (Plaintiff presented complaining of anxiety on November 8, 2013). Although it is clear from his medical records that Plaintiff suffers some level of depression and anxiety, these records (with the sole exception of Dr. Krueger's opinion) support the ALJ's conclusion that Plaintiff's depression and anxiety are non-severe. Essentially, Plaintiff argues that the Court should re-weigh all of the medical opinions in this case to reach a different conclusion than the ALJ did. The Court declines to do so. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

---

[12] There is no evidence in the record indicating that Plaintiff sought care at any time from a mental health specialist for his depression.

**3.** **The ALJ did not err in discounting Dr. Krueger's opinion because Plaintiff did not seek treatment for pain from May 2014 to January 2015.**

Dr. Krueger opined that "the results of the clinical interview and mental status exam indicate that Mr. Arguello shows evidence of having PTSD, depressive disorder NOS, and pain disorder." AR 541. The ALJ wrote that one of the reasons she accorded Dr. Krueger's opinion little weight was because Plaintiff did not seek "medical treatment for pain from May 2014 until January 2015." AR 21.

Plaintiff argues that the ALJ erred in finding that Plaintiff failed to seek treatment for his pain from May 2014 to January 2015, and that the ALJ erred in relying on that finding to reject Dr. Krueger's opinion. Pl.'s Mot. at 10. Plaintiff additionally asserts that the ALJ erred in failing to investigate why Plaintiff did not seek treatment. *Id.* at 11. The Commissioner responds by pointing out that "there is no documentation supporting [Plaintiff's] assertion" that he received treatment for pain between May 2014 and January 2015. Def.'s Resp. at 10. The Commissioner also contends that the ALJ was not required to inquire further as to why Plaintiff did not seek treatment, and that Plaintiff's counsel was responsible for developing that evidence. *Id.* (citing *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("Nonetheless, in cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.") (internal quotation marks and citation omitted)). The Court concludes that the ALJ did not err by taking into account Plaintiff's failure to seek treatment for pain between May 2014 and January

2015, and further concludes that the ALJ was not required to inquire why Plaintiff failed to seek treatment.

Plaintiff's arguments are mutually exclusive, inasmuch as he contends either that (1) Plaintiff sought treatment, which would refute the ALJ's conclusion that he did not, or (2) Plaintiff did not seek treatment, but the ALJ should have further investigated why Plaintiff did not seek treatment before rejecting Dr. Krueger's opinion. The Court begins with Plaintiff's argument that he sought treatment for pain between May 2014 and January 2015. In support of this argument, Plaintiff points only to his own statements to the SSA. Pl.'s Mot. 10 (citing AR 237-38). Plaintiff reported what he characterized as severe pain and depression, as well as PTSD and anxiety.[13] AR 237-38. Plaintiff also reported that a Magnetic Resonance Imaging scan done on October 1, 2014, showed a "new disc herniated fragment on left side[.]" AR 237. None of this information actually indicates that Plaintiff sought treatment for pain, except what can be inferred from the MRI. Plaintiff does not point to anywhere else in the record to show that he sought treatment for pain from May 2014 until January 2015.

The Court's own review of the record indicates that Plaintiff visited PA Gould on May 2, 2014, and reported some left leg numbness and occasional sharp pain in his bilateral thighs. AR 502. Plaintiff also reported that he had spinal injections that did not work to relieve his pain [*see* AR 397-98], and he underwent a lumbar laminectomy on December 19, 2013, that "seemed to help somewhat, but didn't take away all the spasms." AR 502. His medications list from that

---

[13] The Court's review of the medical evidence of record indicates that the only references to PTSD in the entire record came from Plaintiff on October 16, 2014 [AR 237], and Dr. Krueger on May 20, 2015 [AR 540-41]. There is no evidence that anyone diagnosed Plaintiff with PTSD apart from Dr. Krueger, who did so based primarily on Plaintiff's statements. While the Court acknowledges that self-reporting of symptoms is often a crucial component of diagnosis, especially for a psychological condition, Dr. Krueger saw Plaintiff only once for the purpose of examining him for his application for disability benefits. Interestingly, Plaintiff also reported to the SSA on October 16, 2014, that he had been seen by a doctor, hospital, or clinic for PTSD, but there is no evidence in the record to support this claim. *See* AR 238. Plaintiff does not argue that the ALJ failed to identify PTSD as an impairment, much less a severe impairment, but Plaintiff points to his own statements regarding PTSD as proof that he sought treatment for pain between May 2014 and January 2015. *See* Pl.'s Mot. 10, ECF No. 18.

date included the pain reliever hydrocodone-acetaminophen.  AR 502.  PA Gould also prescribed a TENS unit for Plaintiff's back.  AR 503.

On January 27, 2015, Plaintiff returned to PA Gould for a follow up appointment.  AR 512.  PA Gould's notes state that Plaintiff was present for his follow up appointment "after not being here for quite some time."  AR 512.  On that date, Plaintiff reported that the lumbar laminectomy in December 2013 "helped a lot" and that he "recently had injections into his lumbar spine with cortisone, and that only helped a little bit."  AR 512.  PA Gould's notes also indicate that Plaintiff last visited his surgeon, Dr. Shields, on May 1, 2014.  AR 512.  Also during the January 2015 appointment, Plaintiff asked PA Gould to fill his prescription for pain medication, and after discussion with Plaintiff, PA Gould stated that he "would consider [it] if we cut his use in half to start . . . and he said he thinks he could live with that."  AR 513.

Plaintiff testified that he took hydrocodone twice a day for his pain and that it helped.  AR 46.  Plaintiff did not specify how long he had been taking hydrocodone, and his attorney did not ask.  AR 46.  Plaintiff also testified that he took methocarbamol, a muscle relaxer, and sertraline, an antidepressant.  AR 47.  Plaintiff testified that "now that they got the medicines working, they got them real good so it helps the pain and anxiety and depression[.]"  AR 47.  Plaintiff did not specify, and was not asked to specify, how long the treatment had been effective.  Although it is possible that Plaintiff's use of pain medication constitutes treatment for pain between May 2014 and January 2015, the record does not indicate any other treatment for pain, including appointments with health care providers.  The ALJ therefore did not err in finding that Plaintiff did not seek any medical treatment for pain from health care providers during that timeframe.  The Court concludes that substantial evidence supports the ALJ's

statement that Plaintiff did not seek "medical treatment for pain from May 2014 until January 2015[,]" which was one reason the ALJ assigned little weight to Dr. Krueger's opinion. AR 21.

Plaintiff's alternative argument - that he did not seek treatment for pain but there may have been reasons why did not – hinges on the Tenth Circuit requirement that an ALJ should investigate the reasons why a plaintiff did not seek treatment before drawing an adverse inference from failure to treat. The Court is not persuaded that the Tenth Circuit's requirement applies in this case. *See* Pl.'s Mot. 11 (citing *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993)). In *Thompson*, the Tenth Circuit held that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" 987 F.2d at 1490 (quoting *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)). *Thompson* does not apply here, because it concerned the impact on the *plaintiff's credibility* of failure to pursue treatment because she could not afford it. Here, in contrast, the ALJ granted less weight to Dr. Krueger's opinion because the evidence did not support his conclusion that Plaintiff had a pain disorder due to Plaintiff's failure to seek treatment for that pain disorder from May 2014 to January 2015. *See* AR 21. Because Plaintiff was the only source for the information upon which Dr. Krueger relied when he concluded that Plaintiff had a pain disorder, *see* AR 541, and because Plaintiff did not seek treatment for that pain disorder during a specified time period from a health care provider, it was not unreasonable for the ALJ to discount Dr. Krueger's opinion in that regard.

Additionally, it is unclear what additional investigation the ALJ could have done, and Plaintiff does not specify. Plaintiff does not argue that he did not pursue treatment because he

could not afford it. Further, Plaintiff stopped working in April 2013. Despite not working, Plaintiff sought treatment from PA Gould from approximately February 2013 through June 2014, and sought treatment from Dr. Shields at Santa Fe Brain and Spine Associates from approximately November 2013[14] until March 2014 [AR 461-68]. Even if the ALJ had asked Plaintiff why he did not seek treatment for pain from a health care provider between May 2014 and January 2015, it seems unlikely that Plaintiff would have testified that he could not afford the treatment. Plaintiff's decision to pursue this alternative argument is baffling because any other response from Plaintiff about why he did not seek treatment would only diminish his credibility, not bolster it.

Ultimately, additional investigation by the ALJ would not have changed the ALJ's assignment of little weight to Dr. Krueger's opinion. During the hearing, Plaintiff's attorney asked him about treatment for pain and Plaintiff testified about medications that he took for pain. *See* AR 46-47. In light of this testimony, it is unclear to the Court why the ALJ should have asked Plaintiff why he did not seek treatment for pain between May 2014 and January 2015. The ALJ understood that Plaintiff was taking medications for pain and those medications helped alleviate his pain, just as she understood that Plaintiff did not see a health care provider for his pain between May 2014 and January 2015. Taking all of this information together, the ALJ assigned Dr. Krueger's opinion little weight. The ALJ did so in part because Plaintiff did not see a health care provider for his pain between May 2014 and January 2015, yet Dr. Krueger concluded that Plaintiff had a pain disorder and assigned restrictive functional limitations to Plaintiff based in part on that pain disorder. Plaintiff's argument again is essentially a request that the Court re-weigh the evidence, which the Court declines to do.

---

[14] Plaintiff likely started seeing Dr. Shields earlier than that since those records refer to that appointment as a follow-up, but the Court was unable to locate other information in the record regarding appointments with Dr. Shields prior to November 2013.

The ALJ's discounting of Dr. Krueger's opinion because Plaintiff did not seek medical treatment for pain from May 2014 to January 2015 is therefore supported by substantial evidence. Accordingly, the Court recommends affirming the ALJ's evaluation of Dr. Krueger's opinion.

**B.  Dr. Gzaskow's Report from Plaintiff's Second Disability Application Does Not Require Remand**

Plaintiff's third application for disability benefits, which concerned the time period of August 29, 2015, to June 13, 2017, was granted without a hearing on June 13, 2017. Pl.'s Mot. 12. As explained *supra* at 2, therefore, the time period at issue for this appeal is July 18, 2013 through August 28, 2015. AR 18, 28. Dr. Gzaskow provided a report as part of Plaintiff's third application for disability benefits. Pl.'s Mot. 12. Plaintiff argues that Dr. Gzaskow's opinion, which Plaintiff stated was received by the SSA on May 20, 2017, should be considered by the ALJ with respect to this case. Pl.'s Mot. 11-12. Plaintiff does not cite to any supporting case law or regulations.

The Commissioner, on the other hand, argues that Plaintiff's argument "is essentially a request to remand under sentence six of 42 U.S.C. § 405(g)[,]" which "authorizes remand where a claimant presents new and material evidence and shows good cause for not producing the evidence during the administrative proceeding." Def.'s Resp. 14. The Commissioner states that Plaintiff has not actually produced Dr. Gzaskow's opinion, and that Dr. Gzaskow's opinion is not material because "it is not clear that it might have changed the ALJ's decision." *Id*. Finally, the Commissioner points out that "Dr. Gzaskow's opinion was issued before the Appeals Council issued its denial of the request for review. Plaintiff has not shown good cause for not presenting the evidence during the administrative stage." *Id*. Plaintiff's Reply did not address

any of the Commissioner's arguments as to Dr. Gzaskow's opinion, and does not otherwise re-address this issue.

42 U.S.C. § 405(g) states, "The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" The Court is disappointed that neither party attached Dr. Gzaskow's opinion for the Court's consideration. Doing so might have eliminated the Court's questions about when he performed his evaluation and when he prepared his report. This sequence would have gone a long way to resolving the second prong of the "sentence six" analysis (whether there was good cause for the failure to incorporate Dr. Gzaskow's opinion into the record for Plaintiff's second disability application).

But the Court ultimately does not need to decide that question because Plaintiff has failed to satisfy the first prong of the analysis: whether Dr. Gzaskow's opinion was "material" to this proceeding. Evidence is material if there is a reasonable probability that it would have changed the ALJ's decision. *See Chambers v. Barnhart*, 389 F.3d 1139, 1144 (10th Cir. 2004). It is unclear whether Dr. Gzaskow's opinion would change the ALJ's decision, regardless of her rejection of Dr. Krueger's opinion, because Plaintiff did not produce the opinion and it is not otherwise included in the Administrative Record. It is also not clear when Dr. Gzaskow rendered his opinion, but according to Plaintiff, it was received by the SSA on May 20, 2017, which is almost two years after the end of the applicable time period for this case. *See* Pl.'s Mot. 12. When "the new evidence does not demonstrate that the findings relate back to the period on or before the date of the ALJ's decision[,]" a remand is not appropriate. *Williams v. Barnhart*, 178 F. App'x 785, 792 (10th Cir. 2006) (unpublished); *see also Chambers*, 389 F.3d at 1142

(holding that the Appeals Council must consider evidence submitted with a request for review if it is new, material, and related to the period on or before the date of the ALJ's decision).

It is unclear whether Dr. Gzaskow's opinion contained findings that relate back to the time period at issue in this case. Plaintiff states that Dr. Gzaskow "*very likely* provided mental impairment evidence for [Plaintiff's subsequent] application[,]" which "doubtless included information which overlapped the prior case." Pl.'s Mot. 12 (emphasis added). Plaintiff then states that "[a]ny mental impairment information" is "in the sole possession of the Commissioner," which the Court infers to mean that Plaintiff has not seen or received a copy of Dr. Gzaskow's opinion. *Id.* It is therefore unclear how Plaintiff can assert that the opinion "doubtless included information which overlapped the prior case." *See id.* The Court cannot join in speculation like this and simply remand a case on the off-chance that Plaintiff may be correct. Remanding to add Dr. Gzaskow's opinion to the record on this case is therefore not warranted.

## C. The ALJ's Credibility Determination Was Supported by Substantial Evidence

Plaintiff next challenges the ALJ's unfavorable credibility determination, asserting that the issue surrounding Plaintiff's use of a cane, and whether that use was recommended by physicians, has become "a litmus test of [P]laintiff's credibility[.]" Pl.'s Mot. 13. Plaintiff highlights portions of the medical record indicating that Plaintiff walked with a limp and had limited range of motion, and that these symptoms "make use of a cane reasonable." *Id.* at 13. Because Plaintiff's use of a cane was a basis for the ALJ's credibility determination, Plaintiff argues that "further contact with the treating sources would seem to be appropriate[,]" and noted that the ALJ did not follow up with questions about Plaintiff's use of a cane, and she should have if she "felt this one sentence [of] testimony was of great importance." *Id.* at 13-14. Plaintiff also

asserts that "there are no additional or external factors to support a finding of less credibility." *Id*. at 13. Finally, Plaintiff argues that the ALJ's unfavorable credibility determination "is not substantial evidence: it must be based on evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 14 (quoting *Snyder v. Shalala*, 44 F.3d 896, 898 (10th Cir. 1995)).

The Commissioner responds by stating that the ALJ was correct that there is no evidence in the record to support Plaintiff's testimony that his physicians suggested that he use a cane. Def.'s Resp. 11. The Commissioner concedes that the ALJ could have questioned Plaintiff about his use of a cane "more closely[,]" but that "there was no requirement to do so" and Plaintiff's attorney could have also followed up with questioning during the hearing. *Id*. at 11-12.

The ALJ's unfavorable credibility determination of Plaintiff is premised largely upon two findings: (1) that Plaintiff's pain was controlled by medication and (2) that no health care provider ever advised Plaintiff to use a cane, despite his testimony to the contrary. *See* AR 26. What neither party highlights, but is clear from the Court's review of the ALJ's decision, is that while Plaintiff's testimony about his use of a cane significantly reduced his credibility to the ALJ, the ALJ's finding that the evidence showed that Plaintiff's pain was controlled with medication, and thus contradicted Plaintiff's allegations of totally disabling pain, *also* reduced his credibility. AR 26.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) (unpublished) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). Nonetheless, an ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."

*Id.* Given that the ALJ did not base her unfavorable credibility determination solely on the cane testimony, but also considered Plaintiff's medical records and testimony about his pain and how that pain was treated, the Court concludes that the ALJ's credibility finding was closely and affirmatively linked to substantial evidence. Had the ALJ found that Plaintiff was not credible based just on his testimony about his physicians' suggestion that he use a cane, there might have been a different outcome. But here, the ALJ's concerns about Plaintiff's complaints of his pain vis-à-vis his testimony about the positive effects of treatment for that pain also influenced her credibility finding, and were rooted in a close review of Plaintiff's medical records and testimony. *See* AR 25-26.

Additionally, the ALJ's credibility determination was premised on Plaintiff's description of his *physical* conditions, specifically his pain and his use of a cane. *See* AR 26. The primary issue that Plaintiff presents on appeal, however, is that the ALJ erred in her evaluation of Dr. Krueger's opinion about Plaintiff's *mental* limitations. Plaintiff does not otherwise challenge the ALJ's finding with respect to his residual functional capacity or any of her findings regarding Plaintiff's physical impairments. The Court does not conclude that the ALJ erred in rendering an unfavorable credibility determination. But even if the ALJ had erred, her credibility determination would not have changed the outcome with respect to her rejection of Dr. Krueger's opinion because the credibility determination concerned Plaintiff's description of his physical conditions, as opposed to Plaintiff's description of his mental conditions to Dr. Krueger. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (quoting *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993)) (concluding error is harmless when it is "minor enough not to undermine confidence in the determination of th[e] case"). The Court therefore recommends affirming the ALJ's credibility determination as supported by substantial evidence.

**D.     The ALJ Accurately Described the Commissioner's Burden at Step Five**

Finally, Plaintiff contends that the ALJ misstated the Commissioner's burden of proof at step five "by claiming only a 'limited burden' upon the Commissioner to identify other jobs the claimant can do." Pl.'s Mot. 15.  Plaintiff then cites to AR 30, although AR 30 does not contain any language with respect to the Commissioner's burden of proof at step five.  The Court assumes that Plaintiff intended to cite to the portion of the ALJ's decision that discusses the Commissioner's burden of proof at step five.  There, the ALJ wrote, "Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience."  AR 20 (internal citations omitted).

In contending that the Commissioner has the full burden of proof at step five and Plaintiff has none, Pl.'s Mot. 15, Plaintiff becomes tangled in semantics and misses the larger point that the ALJ correctly applied the law.  This issue has come up before in this district.  In *Rivera v. Berryhill*, U.S. District Judge Robert Brack held that language identical to that challenged by Plaintiff has an established legal basis in 68 Fed. Reg. 51153–01, which "explains that the Commissioner's burden at step five is 'limited' because it is simply a shift in the burden of proof."  242 F. Supp. 3d 1226, 1231 (D.N.M. 2017).  According to the regulation, "[W]hile the Commissioner has a burden of production of evidence at step five, 'the ultimate burden of persuasion to prove disability . . . remains with [the claimant].'"  *Id.* (quoting Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational

Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of 'Special Profile' into Regulations, 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003) (to be codified at 20 C.F.R. pts. 404, 416)).

*Rivera* recognized that "while the Tenth Circuit has not addressed the issue, other circuits have explicitly stated that the Commissioner's burden at step five is a limited one." 242 F. Supp. 3d at 1231 (citing *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009) ("We agree in any event with the Commissioner that new regulations abrogate the *Curry v. Apfel* standard of review and clarify that there is only a limited burden shift to the Commissioner at step five.") (citing 20 C.F.R. § 404.1560(c)(2) (2012)); *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 930 (11th Cir. 2015) (unpublished) ("The claimant bears the burden of proving that he is disabled and, thus, is responsible for producing evidence to support his claim . . . [n]onetheless, the Commissioner has a limited burden at step five to show the existence of a significant number of jobs that the claimant can perform.") (citing 20 C.F.R. § 416.920(A)(4)(v) (2012))).

The other circuits cited by *Rivera* described the Commissioner's burden at step five as limited in part because the SSA's regulations characterize the burden shift to the Commissioner as limited. Section 416.920(A)(4)(v) of Title 20, Code of Federal Regulations, provides that the Commissioner must assess whether a claimant can make an adjustment to other work. Section 404.1560(c)(2) adds that the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." Although a claimant must prove that she is disabled at steps one through four, the Commissioner must prove at step five only that the claimant can adjust to other work. The Commissioner's burden of proof overall is

therefore limited. Because the ALJ accurately described the Commissioner's burden of proof at step five, the Court recommends affirming the ALJ's description of that burden.

Alternatively, the ALJ's description of the Commissioner's burden at step five does not require reversal because unpublished case law from this District supports utilizing harmless error analysis in deciding this issue. *Romero v. Colvin* provides that even assuming that the ALJ inaccurately described the burden at step five, the plaintiff did not "explain how such an error affected the ALJ's decision." No. 11-cv-0994 JB/SMV, 2013 WL 12329085 at *5 (Sept. 18, 2013). The *Romero* plaintiff did not show "that the ALJ failed to *apply* the correct legal standard at step five[.]" *Id.* (citing *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were *applied* and whether the decision is supported by substantial evidence.") (emphasis added)). Similarly, Plaintiff does not argue here that the ALJ applied the incorrect standard. To the contrary, the vocational expert identified three occupations Plaintiff could perform with his RFC, none of which are challenged on appeal. *See* AR 28. Because Plaintiff did not argue or show that the ALJ actually applied the incorrect burden of proof at step five, the Court recommends affirming the ALJ's description of the Commissioner's burden of proof at step five.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion [ECF Nos. 18, 19] be **DENIED**, the Commissioner's final decision be **AFFIRMED**, and this action be **DISMISSED.**

**IT IS SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**